United States District Court
District of New Jersey
Camden Vicinage

RECEIVED
MAY 1 2 2022
AT 8:30____M
WILLIAM T. WALSH
CLERK

Markiese King,
                    Plaintiff                    Civ. No. 21-5628
        V.
X. Ponce et al,
                Defendants

## Amended Complaint Against Defendant X. Ponce, and Others, Known and Unknown, For Jury Trial Demand, Seeking Injunctive Relief and Monetary Damages

## Introduction

Comes Now, Pro Se Plaintiff, Markiese King, in the above captioned cause to bring forth the above titled action.

On September 28, 2021, this Honorable Court entered an Order that Complaint be allowed to proceed in part with First Amendment and Eight Amendment claims against X. Ponce and Dr. Kimberly Kodger (Dr. Kodger) in their individual capacities.

This Honorable Court also dismissed complaint in with the Plaintiff being allowed to amend WITHOUT Leave of the Court.

Plaintiff Now Brings Forth Amendments that include:

1. Jurisdiction
2. Additional Parties (Defendants)
3. Additional Claims For Relief
4. Relief Sought (Damages)

An Amended Complaint Supersedes the original version of

the complaint, and any new pleading should therefore include the original allegations and incorporate any changes Plaintiff seeks to make, Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002)("An Amended Complaint [supersedes] the original version in providing the blue print for the future course of a lawsuit.")

The Amended Complaint is as follows:

## Jurisdiction

This case raises a question of the interpretation of the Retalitation Clause of the First Amendment, Protection Clause and Cruel and unusual Punishment Clause of the Eight Amendment, and the Due Process Clause of the Fifth Amendment, all of which extend from conditions of confinement. This Honorable District Court has concurrent jurisdiction under the general federal question jurisdiction conferred by 28 U.S.C 1331 and 42 U.S.C 1983.

## Exhaustion Of Administrative
## And Alternative Remedies

Plaintiff did exhaust ALL remedies available within the Bureau Of Prisons (B.O.P).

Plaintiff also exhausted alternative remedies outside B.O.P as outlined by Prison Rape Elimination Act (PREA).

## Parties

Plaintiff: Markiese King # 50166-039
FCI Pollock
Po Box 4450

## Parties

1. Merrick Garland: Attorney General of the United States (U.S.)
2. Philip R. Sellinger: U.S. Attorney for District of New Jersey.
3. John Doe: Warden of Fort Dix during time of incident.
4. Dr. Kimberly Kodger: Associate Warden (AW) of Fort Dix.
5. Xavier Ponce: Correctional Officer (C.O.)/Supervisor for Fort Dix Unicor
6. Ms. W: Psycharist or Psychologist for Fort Dix Pschology Department.
7. Lt. Fernandez: Special Investigations Section (SIS) Lt.
8. C.O. Brian Winn: C.O./Supervisor for Fort Dix Unicor.
9. Ms. K Rodgers: C.O./Supervisor for Fort Dix unicor.
10. Rodriguez: " C.O. unicor "
11. Freeiaz: " C.O. unicor "
12. Lt. Morocco: Lt. for Fort Dix Compound.
13. Jane Doe: Psychology Secretary.
14. Montgomery: 5841 Unit Team Counselor
15. Bullock: 5841 Unit Team Manager
16. John Doe: 5841 Unit Team Case Manager

Defendants 3 thru 16 are sued in their individual capacities.

## Facts

1. Within the month of September 2020, Plaintiff was confined at FCI Fort Dix.
2. During this time, Plaintiff work for Unicor sewing clothes for the U.S. Army.
3. One morning while working, Ponce called Plaintiff into his office.
4. Ponce had a creepy grin on his face but said nothing.
5. Plaintiff asked was there a problem.
6. Ponce responded his source told him Plaintiff was in TV with a transgender with the lights out.

7. On another morning while working, Ponce continuously walked past Plaintiff's workstation with the sly and creepy grin before stopping.

8. Ponce stated to Plaintiff, "I heard you be up all night with the transgenders be out."

9. Plaintiff responded, "no and please don't disrespect me like that."

10. Ponce replied, "my sources tell me right."

11. Plaintiff Countered, "your sources tell you wrong."

12. Ponce walked away smiling the creepy grin.

13. The next day Ponce began telling the entire Unicor Factory, that included staff officers B. Winn, K. Rodgers, Rodriguez, and Freeaiz, Plaintiff had been in a dark room with a transgender person.

14. Plaintiff then asked Ponce to stop spreading misinformation.

15. Ponce called Plaintiff into office again.

16. Ponce asked Plaintiff if he "Knew what it was like being inside a man."

17. Plaintiff responded "hell no!" and "why you keep disrespecting me."

18. Ponce ask Plaintiff, "have you been inside 'man-gina'"

19. With heart racing Plaintiff became afraid.

20. Plaintiff answered, "no."

21. Ponce then told Plaintiff "there's nothing wrong with it," and "not to knock it until you try it" because "its the same feeling as a women."

22. Ponce then asked to see tattoo on Plaintiff's left hand.

23. Ponce grabbed Plaintiff's hand and began to caress it in a sexual manner.

24. Plaintiff immediately removed his hand and upon leaving the office, Ponce stated, "the world is changing, and you will one day Know what I'm talking about!"

25. The following day Plaintiff went to C.O. B. Winn about the incident in Ponce's office.

26. B. Winn asked if I wanted to see psychology and called over.

27. Plaintiff was meet by Psychology staff Ms. W, as she asked to be called due to

her name being hard to pronounce.

28. MS. W. took statement and asked if Plaintiff wanted to file a PREA complaint.

29. Plaintiff was afraid and hesitant to file complaint.

30. MS. W picked up the phone and called her boss, Dr. Kimber Kodger, and hung up telling Plaintiff, Dr. Kodger says his statement is PREA and yes or no to filing complaint.

31. Plaintiff filed PREA complaint against CO. X. Ponce (Ponce)

32. Plaintiff then met with SIS Lt. Fernandez, who took a statement and pictures (pics) of Plaintiff's upper body.

33. Plaintiff was sent to medical where medical doctor took his statement.

34. The next day, Plaintiff was at work station when Ponce came in with a hard creepy mad grin.

35. From that day forward, Ponce began the continual harassment that included cell and body searches, and writing him up for no reason.

36. Plaintiff continued reporting the harassment to psychology but nothing was being done.

37. Unicor inmates and staff were witnesses to the harassment.

38. Ponce continued the threatening, intimidating and creepy looks and telling inmates he was coming for Plaintiff and was going to send him to the Special Housing unit (SHU) also known as (aka) the "hole".

39. Plaintiff continued to report to MS. W. and psychology department.

40. Several months passed with Plaintiff complaining asking why Ponce was allowed to keep working unicor and continue to harass him, but being told there was nothing they could do.

41. Plaintiff told MS. W. by filing PREA complaint, Ponce would retaliate and he did and was continuing his attacks by sending other C.O.s to search his cell and telling other inmates these searches was, "my work."

42. John Doe warden and/or AW Dr. Kodger refused to remove Ponce or

Plaintiff from Unicor after PREA complaint was filed

43. Weeks after filing the complaint, Plaintiff was sent to SHU from September 30, 2020 to October 21, 2020 pending PREA investigation against Inmate Athony Riker.

44. While in the SHU, Plaintiff was again interviewed by SIS Lt. Fernandez.

45. SIS Lt. Fernandez began the interview by telling Plaintiff he knew that the issues with Inmate Rike were not PREA Claim

46. Plaintiff told Lt. Fernandez that someone had put Inmate "Riker up to this."

47. Lt. Fernandez responded, "Who do you think did this? Ponce?"

48. Plaintiff replied, "Yes."

49. Plaintiff had not mentioned Ponce's name.

50. Plaintiff was released back to same unit.

51. Plaintiff again reported to MS. W. and was told She would add it to the PREA report, but "nothing else" she "could do."

52. January 2021, Plaintiff recognized Psychology worker as C.O of his unit.

53. C.O. was Jane Doe Secretary

54. Plaintiff went into office, explained PREA Situation, and returned to cell

55. Moments later, Jane Doe Secretary called Plaintiff back to office, and sent him to office of Fort Dix Compound Lt. Morocco.

56. Plaintiff explained to Lt. Morocco the PREA Situation, his concerns about Ponce being allowed to stay in Unicor, ███ his concerns about the retaliation and fears it would escalate.

57. In an agressive and hostile manner, Lt. Morocco asked Plaintiff why he had to the Jane Doe Secretary about it?

58. Plaintiff responded, "because she Psychology."

59. Lt. Morocco angrily stated, 'No she's not! Any time she work A unit

She's a unit officer!"

60. Lt. Morocco then asked if Plaintiff felt his life was in danger.

61. Plaintiff was confused by Lt. Morocco's anger and was scared to answer truthfully so he said, "no."

62. Lt. Morocco then told Plaintiff to return to unit and not to talk to Jane Doe secretary about psychology issues, on unit issues.

63. Plaintiff returned to unit, explained the situation to Jane Doe secretary, and was told there was nothing she could do.

64. Plaintiff asked if she could add the encounter with Lt. Morocco and continued harassment by Ponce to the file.

65. The harassment continued.

66. Plaintiff continued to report the incidents.

67. The Plaintiff was scared and began to fear for his life

68. Plaintiff felt stressed and suicidal.

69. One day while leaving work, Ponce stopped Plaintiff and gave him an agressive body search for no reason in front of everyone.

70. Plaintiff felt very uncomfortable, scared, embarassed and humiliated, and anxious.

71. Plaintiff again reported to MS. W, asking how Ponce war still working unicor, and be allowed to harass and bully him.

72. On March 3, 2021, feeling unsafe, uncomfortable and humiliated with the presence of Ponce, Plaintiff quit unicor job.

73. Subsequently, Plaintiff was sent to SHU for smoking weed.

74. Plaintiff began smoking weed because he was depressed, nervous, and distraught about the PREA situation.

75. Plaintiff felt helpless and hopeless.

76. Plaintiff felt no one cared, fell into a deep depression, began having nightmares, and wanted to die.

77. While in SHU, Plaintiff reported these feelings to MS. W.

78. Ms. W. told Plaintiff, "it's out of my hands," and "there's nothing I can do but keep adding to the [PREA] report."

79. Plaintiff was placed on Zoloft and Rimron for depression and anxiety.

80. Plaintiff filed BP-8 with his 5841 Unit Team to no avail.

81. The 5841 Unit Team consisted of

82. From the 5841 Unit Team, the BP-8 is returned to inmate with BP-9 appeal form to the John Doe Warden.

83. From John Doe Warden, the BP-9 is returned to inmate with a BP-10 appeal form to be sent to the Regional Office in Grand Prairie, Texas.*

84. To date, Plaintiff has not received received any of these forms, only un-answered BP-8s in his possession.

85. Plaintiff began writing outside agencies about the PREA situation and how the Fort Dix staff was doing nothing to help him.

86. The outside agencies consisted of:

1. Office of the Inspector General

2. Bruce Kuennen, PREA Auditors of America

3. U.S. District Court of New Jersey

4. North East Regional Office

87. Plaintiff now files this suit against the Defendants, known and unknown, within this complaint in their individual capacities for Injunctive Relief and monetary damages, with Demand for Jury Trial, and with Demand for Defendants to Answer complaint in accordance to statutory limitations.

## Claims For Relief
## First Amendment

1. Plaintiff's right to be free from retaliation were violated by Ponce

and Ponce's continued harassment, body searches, orchestration of cell searches and filing of false PREA complaint, discriminatory comment to inmates and staff about Plaintiff being with a transgender person, after Plaintiff filed PREA complaint against him.

2. Plaintiff's rights were violated by Ponce's actions of discriminatory intent for Plaintiff's believed sexual orientation

3) Plaintiff became depressed, anxious, afraid and suicidal and was placed on Zoloft and Rimron.

4. Plaintiff did suffer Emotional Distress and Mental Anguish.

## Fifth Amendment

1. Plaintiff's right to Due Process created by PREA regulations were violated by John Doe Warden and AW Dr. Kimberly Kodger, others Known and unknown when Ponce WAS NOT removed from Unicar after Plaintiff filed PREA Claim.

2. Plaintiff's right to Due Process created by BOP Program Statement (P.S.) 5324 by John Doe Warden, AW Dr. Kodger, SIS Lt. Fernandez, Compound Lt. Morocco, and others Known and unknown when there was no investigation was launched or was incomplete after Plaintiff filed PREA claim.

3. Plaintiff's rights to Due Process were violated by John Doe Warden, AW Dr. Kodger, SIS Lt. Fernandez, Compound Lt. Morocco, and others Known and unknown under regulations created by C.F.R. 115.71-115.73 when they failed its investigation standards.

4. Plaintiff's right to Due Process was violated under 28 C.F.R 115.76 when Ponce was not removed from unicar after sexual harassment claim by John Doe Warden, Dr. Kodger (AW), and others Known and unknown.

5. Plaintiff was denied Due Process created by the BOP's Admi-

Remedies when file BP8(s) and BP-9(s) were to "no avail."

6 Plaintiff's right to Due Process created by PREA Regulations, the BOP Program Statement (P.S) and C.F.R were violated by ALL Defendants charged with the duty to investigate Sexual [harassment] Claims.

7 Plaintiff continually suffered harassment, retaliation, and sujected to cruel and unusual punishment.

8. Plaintiff did suffer Emotion Distress, Mental Anguish, and was placed on medications, Zoloft and Rimron.

## Eight Amendment

1. Ponce violated Plaintiff's right to be free from sexual harassment with creepy grins, sexual comments and caressing Plaintiff's hand in Sexual manner.

2. Plaintiff's right to be protected were violated by Defendants 3 thru 16 who took no immediate actions to reduce or eliminate, detect or prevent, and/or punish Ponce and/or the reported harassment and retaliation for filing PREA Claim.

3. Plaintiff's right to be Protected were violated by Defendant 3 thru 16 when no immediate action was taken to protect Plaintiff from substantial risk of Sexual [harassment] and [retaliation] by Ponce

4. Plaintiff's right to be protected were violated by Defendants 3 thru 16 actions and/or inactions with willfull, wanton and negligent behavior, and was or became deliberately indifferent to Plaintiff's continued complaints, with Plaintiff being told "there's nothing I can do", "there's nothing MoRE I can do", or "It's out of my hand."

5. Failure to Protect continues in the following:

1. John Doe warden failed to protect Plaintiff from discrimination by

Staff, failing to remove Ponce from Unicor, Fort Dix, or leave pending investigation, failing to abide by BOP Program Statement (P.S.) 5324, failing to implement PREA regulations, and failing to properly answer and/or investigate claims in Plaintiff's BP 9.

2. Dr. Kimberly Kodger failed in her duties as AW/PREA supervisor to protect Plaintiff from discrimination from staff, failing to remove Ponce from Unicor, Fort Dix, or leave pending investigation, failing to abide by BOP P.S. 5324, failing to launch investigation in to PREA claim in accordance to BoP P.S. and PREA regulations.

3. Ms. W failed in her duties as Psychology to protect the Plaintiff from mental and emotional harm by failing to do more than write and add to PREA report, failing to ensure enforcement of PREA regulations and Standards and BOP P.S., and ensuring the removal of Ponce from Unicor.

4. Lt. Fernandez failed in his duties as Special Investigation Section (SIS) Lt. ~~████████~~ to protect the Plaintiff by failing to investigate the sexual harassment and retaliation claims from Plaintiff, failing to enforce or ensure enforcement of PREA regulations and Standards and BOP P.S. by removing or having Ponce removed from Unicor.

5. Lt. Morocco, the 12th named Defendant, failed in his duties as Compound Lt. to protect Plaintiff by failing to investigate the sexual harassment and retaliation claims from Plaintiff, failing to enforce or ensure enforcement of PREA regulations and Standards and BOP P.S. 5324, failing to remove or have Ponce removed from Unicor, by being deliberately indifferent to Plaintiff's anguish, and blocking or attempting to block alternative avenues for the Plaintiff to find help from Jane Doe Psychology Secretary.

6. Defendants 8 thru 11 and 13 thru 16 failed in their duties as BOP employees to protect the Plaintiff by being deliberately indifferent to the sexual harassment and retaliation that was witnessed, heard, and/or claimed by

Plaintiff.

6. Plaintiff was subjected to cruel and unusual punishment when cell searches orchestrated by Ponce, as "my work", amounted to 'Calculated harassment unrelated to prisoner's need.' Hudson v. Palmer, 468 U.S. 517, 530 104 S. Ct 3194 (1984)

7. Plaintiff was subjected to cruel and unusual punishment when body searches were 'needlessly intrusive, abusively performed and conducted in an unnecessarily public manner.'

8. Plaintiff became depressed, anxious, nervous, afraid, helpless, hopeless, and Suicidal.

9. Plaintiff was placed on Zoloft and Rimron to treat the Depression and Axiety.

10. Plaintiff did suffer Mental Anguish and Emotional Distress

## Relief Sought

1. Injunctive Relief: Plaintiff seeks injunction to ensure enforcement of PREA regulations and standards.
b) ensure enforcement of BOP Program Statement (P.S.) 5324.
c) have staff placed on leave or temporarily reassigned when PREA claim is pending investigation.

2. Monetary Damages (Actual and Punitive)
1. Xavier Ponce: $1,000,000 + punitive
2. John Doe Warden: $750,000 + punitive
3. Dr. Kimberly Kadger: $750,000 + punitive
4. Ms. W: $750,000 + punitive
5. Lt. Fernandez: $700,000 + punitive
6. Brian Winn: $100,000 + punitive

7. K. Rodgers: $100,000 + punitive

8. Rodriguez: $100,000 + punitive

9. Freeair: $100,000 + punitive

10. Lt. Morocco: $750,000 + punitive

11. Jane Doe (Psychology Secretary) $50,000 punitive

12. Montgomery: $500,000 $ punitive

13. Bullock: $50,000 + punitive

14. John Doe (5841 Unit Team Case Manager): $50,000 + punitive

I declare under penalty of perjury that the foregoing is true and correct.

This 5-5-22 day of May, 2022

_Markese King_
Signature of Plaintiff

_Dan V. Sharp II_
Signature Of Authorized Preparer
Dan V. Sharp #18547042
FCI Pollock Unit: E3/224
P.O. Box 4050
Pollock, LA 71467

