**NOT FOR PUBLICATION                                    ECF NO. 35

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MARKIESE KING, | : | CIV. NO. 21-5628 (RMB/AMD) |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| XAVIER PONCE, et al., | : | |
| | : | |
| Defendants | : | |

_____

**APPEARANCES:**

Mark A. Gulbranson, Jr., Esq.
Katherine D. Hartman, Esq.
Attorneys Hartman, Chartered
68 E. Main Street
Moorestown, NJ 08057-1590
        Pro Bono Counsel on behalf of Plaintiff

Kristin Lynn Vassallo, Assistant United States Attorney
Thandiwe Boylan, Assistant United States Attorney
Office of the U.S. Attorney, District of New Jersey
970 Broad Street
Newark, NJ 07102
        On behalf of Defendants

**RENÉE MARIE BUMB**, Chief United States District Judge

        This matter comes before the Court upon the motion to dismiss Plaintiff's

amended complaint under Fed. R. Civ. P. 12(b)(6) filed by Defendants Xavier

Ponce, Dr. Kimberly Kodger, Michael Fernandez, Bernard Winn, Cheryl Rogers-

Gallam, Randy Rodriguez, Jose Frias, Jason Montgomery, and Kevin Bullock (Mot. to Dismiss, Dkt. No. 35; Defs' Brief, Dkt. No. 35-3), Plaintiff's brief in opposition to Defendants' motion to dismiss (Pl's Brief, Dkt. No. 44), and Defendants' reply brief in further support of Defendants' motion to dismiss (Defs' Reply Brief, Dkt. No. 47.) The Court will decide the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons discussed below, the Court will dismiss the amended complaint for failure to state a *Bivens* claim.

## I.     THE AMENDED COMPLAINT

Plaintiff filed a *pro se* amended complaint in this matter on or about May 12, 2022, and alleges the following.  (Am. Compl., Dkt. No. 22.)  In September 2020, Plaintiff was incarcerated in FCI Fort Dix, where he had a job with UNICOR.  (*Id.* at 3, ¶¶ 1-2.)  One morning, Defendant Xavier Ponce ("Ponce") called Plaintiff into his office and, with a creepy grin on his face, told Plaintiff that a source had told him Plaintiff was in a dark room with a transgender person.  (*Id.* at 3, ¶¶ 3-6.)  On another occasion, Ponce walked by Plaintiff's workstation, with the same creepy grin, and said he had heard Plaintiff was out all night with "the transgenders."  (*Id.* at 4, ¶¶ 7-12.)  The following day, Ponce told everyone in the UNICOR factory that Plaintiff had been in a dark room with a transgender person.  (*Id.* at 4, ¶ 13.)  Plaintiff asked Ponce to stop spreading misinformation, and Ponce responded with lewd questions about the alleged sexual encounter, and grabbed Plaintiff's hand and caressed it in a sexual manner.  (*Id.* at 4, ¶¶ 13-23.)  Plaintiff left the office immediately.  (*Id.* at 4, ¶ 24.)

The next day, Plaintiff went to speak to Defendant Winn ("Winn") about the incident with Ponce, and Winn referred Plaintiff to the Psychology Department. (*Id.* at 4, ¶¶ 25-26.) A staff member, who went by "Ms. W.," took a statement from Plaintiff, and asked him if he wanted to file a PREA [Prison Rape Elimination Act] complaint. (*Id.* at 4, ¶¶ 26-28.) After Associate Warden Kodger told Ms. W. that Plaintiff's statement fell within PREA, Plaintiff decided to make a PREA complaint against Ponce. (*Id.* at 5, ¶¶ 30-31.) Plaintiff also met with Lt. Fernandez, who took a statement from him, took pictures of his upper body, and sent Plaintiff to the medical department, where a doctor took his statement. (*Id.* at 5, ¶¶ 32-33.)

Beginning the following day, Ponce began to harass Plaintiff by searching his cell and body and writing him up for no reason. (*Id.* at 5, ¶¶ 34-35.) Plaintiff reported the harassment to Ms. W. and the Psychology Department but nothing was done. (*Id.* at 5, ¶ 36.) For months Plaintiff complained about Ponce's continued harassment in retaliation for filing a PREA complaint, but the warden and Associate Warden Kodger refused to remove Ponce or Plaintiff from UNICOR. (*Id.* at 5, ¶¶ 40-42.)

From September 30, 2020, to October 21, 2020, Plaintiff was sent to the SHU pending a PREA investigation against inmate Anthony Riker. (*Id.* at 6, ¶ 43.) While in the SHU, Lt. Fernandez interviewed Plaintiff again, and asked if he thought Ponce had put Riker "up to this," to which King replied, "yes." (*Id.* at 6, ¶¶ 44-49.) Plaintiff reported this to Ms. W, who added it to Plaintiff's PREA complaint but said she there was nothing more she could do. (*Id.* at 6, ¶ 51.)

In January 2021, Plaintiff explained his situation to Jane Doe Secretary, whom he recognized from the Psychology Unit, but she was working as an officer on his unit.  (*Id.* at 6, ¶¶ 52-54.)  She referred him to "Compound Lt. Morocco," who was angry and aggressive toward Plaintiff.  (*Id.* at 6, ¶¶ 55-58.)  Plaintiff lied to Lt. Morocco, denying that he felt his life was in danger, because he was afraid of Lt. Morocco.  (*Id.* at 7, ¶ 61.)  Lt. Morocco told Plaintiff to return to his unit and not to discuss "psychology" issues with Jane Doe Secretary.  (*Id.* at 6-7, ¶ 62.)  Ponce continued to harass Plaintiff, and Plaintiff continued to report him, which caused Plaintiff to feel stressed, scared and suicidal.  (*Id.* at 7, ¶¶ 65-68.)

Ponce conducted an aggressive body search on Plaintiff in front of others, for no reason.  Plaintiff reported this to Ms. W.  (*Id.* at 7, ¶¶ 69-71.)  On March 3, 2021, Plaintiff quit his UNICOR job because he felt unsafe and humiliated in Ponce's presence.  (*Id.* at 7, ¶ 72.)  Plaintiff felt hopeless, depressed and wanted to die, which he reported to Ms. W, but she could only add his complaints to his PREA complaint. (*Id.* at 7, ¶¶ 75-78.)  Plaintiff filed a BP-8 grievance form with his unit team, but they returned it to him unanswered with a BP-9 form, which was returned to him with a BP-10 form.  (*Id.* at 8, ¶¶ 80-83.)  Plaintiff never received a response to any of these grievances.  (*Id.* at 8, ¶ 84.)  Plaintiff wrote to a number of outside agencies, including OIG, the "PREA Auditor of America," and this Court, about how FCI Fort Dix failed to help him with his PREA situation.  (*Id.* at 8, ¶¶ 85-86.)

Plaintiff asserts three causes of action in his amended complaint:  (1) a First

Amendment retaliation claim against Ponce for harassment by filing false reports and spreading misinformation about Plaintiff's sexual orientation, after Plaintiff filed a PREA complaint against him;  (2) Fifth Amendment due process claims against Associate Warden Kodger, Lt. Fernandez, Lt. Morocco, and John Doe defendants for failing to investigate Ponce's sexual harassment or remove him from UNICOR, in violation of BOP Program Statement 5324 and BOP regulations; and (3) an Eighth Amendment claims against all Defendants for failing to protect Plaintiff from Ponce's sexual harassment, failing to remove Ponce from UNICOR, and failing to investigate or prevent Ponce's continued harassment.  (*Id.* at 8-12.)  For relief, King seeks damages and an injunction[1] enforcing PREA regulations and BOP Program Statement 5324.  (*Id.* at 12-13.)

## II.   DISCUSSION

### A.   Motion to Dismiss Rule 12(b)(6)

District courts addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim, "must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

---

[1] Defendants assert injunctive relief is not available under *Bivens* (Defs' Brief, Dkt. No. 35-3 at 11 n. 1).  Plaintiff did not address this issue.  "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).  The parties left open whether there is another basis for this Court's jurisdiction over Plaintiff's claims for injunctive relief. Therefore, this Court considers only Plaintiff's *Bivens* claims for damages.

Cir. 2009) (internal quotation marks omitted).  In determining whether a plaintiff has failed to state a claim, district courts should disregard allegations that are no more than legal conclusions.  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted in *Palakovic*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## B.   The Parties' Arguments

Defendants seeks dismissal of the amended complaint for two separate reasons: (1) the Court should not extend a *Bivens* damages remedy to Plaintiff's First, Fifth, and Eighth Amendment claims; and (2) Defendants are entitled to qualified immunity on Plaintiff's claims.  (Defs.' Brief, Dkt. No. 35-3 at 2.)  Defendants contend the Supreme Court has determined that *Bivens* does not extend to a First Amendment retaliation claim.  (*Id.* at 15-16.)  Defendants further argue that Plaintiff's Fifth and Eighth Amendment claims each present a new *Bivens* context, and should be dismissed because special factors counsel hesitation in extending *Bivens* in these new contexts. (*Id.* at 16-24.)  Finally, Defendants submit they are entitled to qualified immunity on each of Plaintiff's claims.  (*Id.* at 25-29.)

In opposition to Defendants' motion to dismiss, Plaintiff asserts that the facts pled in the amended complaint are not materially different from cases where the Supreme Court has extended *Bivens* liability.  (Pl's Brief, Dkt. No. 44 at 5-8.)  Even if the Court finds Plaintiff's claims present a new *Bivens* context, Plaintiff argues that special factors do not counsel hesitation in extending a *Bivens* damages remedy because Plaintiff was unable to obtain a remedy through the BOP Administrative Remedy Program or any other avenue.  (*Id.* at 8-10.)  Plaintiff also opposes relief on qualified immunity because Defendants had a duty to intervene in Ponce's harassment of Plaintiff, and discovery is necessary to show Defendants' deliberate indifference to Plaintiff's safety.  (*Id.* at 10-11.)

Defendants, in their reply brief, assert Plaintiff failed to acknowledge that the Supreme Court, in *Egbert v. Boule*,[2] held there is no *Bivens* cause of action for a First Amendment Retaliation claim.  (Defs' Reply Brief, Dkt. No. 47 at 6.)  Additionally, Defendants contend Plaintiff failed to address whether his Fifth Amendment claims presents a new *Bivens* context, where special factors counsel hesitation in implying a *Bivens* damages remedy.  Defendants also disagree with Plaintiff's argument that his Eighth Amendment claims of failure to protect do not present a new *Bivens* context.  (*Id.* at 6-11.)  Finally, Defendants assert they are entitled to qualified immunity because Plaintiff failed to plausibly allege any constitutional violation.  (Defendants' Reply Brief, Dkt. No. 47 at 12-13.)

---

[2] 142 S. Ct. 1793 (2022).

### 1.    Whether the Court Should Imply a *Bivens* Damages Remedy for Plaintiff's First Amendment Retaliation Claim

Plaintiff, a federal prisoner, seeks money damages against Ponce, a federal actor, for retaliating against Plaintiff after he filed a PREA complaint, *see* 34 U.S.C. § 30302 *et. seq.*, against Ponce in FCI Fort Dix.  "Although § 1983 gives plaintiffs the statutory authority to sue state officials for money damages for constitutional violations, *see* 42 U.S.C. § 1983, there is no statutory counterpart to sue federal officials."  *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023).  In three prior cases, the Supreme Court has implied a cause of actions for damages under the Constitution, where no statutory cause of action existed for claims against federal actors.  *Egbert*, 142 S. Ct. at 1802.  The Court identified those three cases:   *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (implying a damages remedy for a Fourth Amendment unreasonable search and seizure claim); *Davis v. Passman*, 442 U.S. 228 (1979) (implying a damages remedy for a Fifth Amendment claim based on gender-based discrimination); and *Carlson v. Green*, 446 U.S. 14 (1980) (implying damages remedy for an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical need).

In 2022, the Supreme Court in *Egbert* stated that if  "called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."  142 S. Ct. 1793, 1802-1803, 1809.  Nonetheless, the Court retained the familiar two-step test for courts to determine whether to imply a damages remedy against federal

actors for Constitutional violations:  (1) courts must first ask whether the case presents "a new *Bivens* context" and, if so (2) determine whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1803. Tellingly, the Court stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts[.]" *Id.* at 1800.

Under the first step, the "new-context inquiry is easily satisfied[.]" *Id.*  A new context is any context "different in a meaningful way" from the three cases in which the Supreme Court has implied a damages action.  *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017)).

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1860.

If a case presents a new *Bivens* context, courts may not extend *Bivens* if any single factor counsels against a judicially created damages remedy. *Egbert*, 142 S. Ct. at 1803. Moreover, the two steps "often resolve to a single question:  whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*  "If there is even a single 'reason to pause before applying *Bivens* in a new context,'

a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).  Special factors that counsel hesitation in implying a *Bivens* remedy include whether the court can predict the systemwide consequences of implying a damages remedy; and whether Congress has provided or authorized the Executive Branch to provide an alternative remedial structure, even if the remedy does not provide complete relief.  *Id.* at 1804 (citations omitted).  Ultimately, the question is which political branch is better equipped to decide the available remedies.  *Id.* (citations omitted).  The Court has "recognized that Congress is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts."  *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856).

In *Egbert*, the Supreme Court determined that courts should not imply a *Bivens* remedy for any First Amendment retaliation claim because "there are many reasons to think that Congress, not the courts, are better suited to authorize such a damages remedy."  142 S. Ct. at 1807.  Therefore, the Court will grant Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim(s) for damages.

**2.    Whether the Court should imply a *Bivens* remedy for Plaintiff's Fifth Amendment Due Process Claims**

Plaintiff asserts that PREA regulations and BOP Program Statement 5324 create a due process right for investigation of a prisoner's claim of sexual harassment and disciplinary action against a prison employee for sexually harassing an inmate. (Am. Compl., Dkt. No. 22 at 9-10.)  Plaintiff alleges Defendants failed to investigate

or take appropriate action under these regulatory standards and policy statement.  The only similarity between Plaintiff's claims and one of the three cases where the Supreme Court implied a *Bivens* damages remedy is that *Davis* involved a claim of gender-based discrimination.  Here, Defendants are prison officials guided by BOP regulations and policies concerning PREA complaints.  Unlike the employer-employee relationship between a Congressman and a staff member, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them[.]"  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  Based on the federal actors involved and context of the discrimination claims, Plaintiff's Fifth Amendment claims are meaningfully different from *Davis*.  Thus, the Court must determine whether special factors counsel hesitation in implying a *Bivens* remedy in this new context.

Before extending a *Bivens* remedy in a new context, this Court must consider whether:  (1) there is "any alternative, existing process for protecting the injured party's interests" or (2) there exists other "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857-58. Defendants submit there are existing alternatives for protecting Plaintiff's interests, and there are several factors that counsel hesitation in implying a damages remedy for Plaintiff's Fifth Amendment due process claims.  Defendants submit the BOP administrative remedy program and the Federal Tort Claims Act are existing remedial alternatives to an action for damages.  (Defs' Brief, Dkt. No. 35-3 at 21.)  Factors that

counsel hesitation in implying a damages remedy in this new context, according to Defendants, include:  1) separation of powers principles, based on Congress' failure to create a damages remedy for federal prisoners and delegating the protection of federal prisoners to the Bureau of Prisons under 18 U.S.C. § 4042(a)(3) and PREA, 34 U.S.C. §§ 30301 *et seq.*, which does not include a private right of action for damages; (2) the systemwide costs and burden on the Government of a damages action in the prison context, and harmful effects on the discharge of prison officials' duties; and (3) that the sheer volume of potential suits are difficult to administer, with 150,000 inmates in BOP custody and 35,000 BOP employees.  (*Id.* at 21-24.)

Plaintiff argues that he availed himself of the BOP administrative remedy program and PREA protections, but nothing was done to protect him.  (Pl's Brief, Dkt. No. 44 at 8-9.)  Therefore, these alternatives were not available to him, and should not preclude a damages remedy.  Plaintiff also contends that special factors do not counsel hesitation in extending a damages remedy because the Third Circuit has recognized that the Prison Litigation Reform Act ("PLRA") "governs the process by which federal prisoners may bring *Bivens* claims," and thus "cannot rightly be seen as dictating that a *Bivens* cause of action should not exist at all." (*Id.* at 10, quoting *Mack v. Yost*, 968 F.3d at 323-24 (3d Cir. 2020) (internal quotation marks and citation omitted)).

In their reply brief, Defendants assert that, pursuant to *Egbert*, courts may no longer recognize a *Bivens* damage remedy if "there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed."  (Defs' Reply Brief, Dkt. No. 47 at 9, citing *Egbert*, 142 S.

Ct. at 1805 (citation omitted)).  Defendants contend they have offered several rational reasons that Congress is better suited to determine whether a damages action may proceed, including separation of powers concerns, the availability of alternative remedial processes, and they systemwide costs and burden of creating a damages remedy.  (*Id.*)

Defendants' arguments are well-supported by *Egbert*.  The existence of alternative remedial processes alone are sufficient to counsel hesitation in implying a *Bivens* damages remedy to Plaintiff's Fifth Amendment claims.  The Supreme Court explained:

> our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858; *see also Schweiker* [*v. Chilicky*], 487 U.S. [412,] 425, 108 S.Ct. 2460 [1988].  If there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858.

*Egbert*, 596 U.S. at 493.  The Court stated "[i]n *Malesko*, we explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an "Administrative Remedy Program." *Id.* at 497 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).  The Court added,

> the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.

> That is true even if a court independently concludes that the Government's procedures are "not as effective as an individual damages remedy." *Bush* [*v. Lucas*], 462 U.S. [367,] 372, 103 S. Ct. 2404 [1983].

*Egbert*, 596 U.S. at 498.

Therefore, Congress' delegation of power to the BOP to "have charge of the management and regulation of all Federal penal and correctional institutions," 18 U.S.C. § 4042(a)(1), and the BOP's creation of an administrative remedy system for prisoners' grievances, 28 C.F.R. § 542.10 *et seq.*, foreclose a *Bivens* damages remedy for Plaintiff's Fifth Amendment claims.  *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (where plaintiff had access to some redress for retaliation claim,   "BOP's administrative remedy program offers a 'convincing reason,' *Abbasi*, 137 S. Ct. at 1858, for us to refrain from creating a new damages remedy against federal prison officials"); *see also Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023) (existence of BOP administrative remedies constituted a "special factor" counseling against the extension of a *Bivens* remedy into a new context of failure to protect inmate from violence).  The legislative and executive branches  have created a remedial process that the courts may not second-guess.  This Court will not imply a *Bivens* remedy for Plaintiff's Fifth Amendment claims.

### 3.    Whether the Court should imply a *Bivens* remedy for Plaintiff's Eighth Amendment Failure to Protect Claims

Plaintiff contends that his Eighth Amendment failure to protect claims do not arise in a new *Bivens* context, his claims are substantially the same as that in *Carlson*,

where the Supreme Court implied a damages remedy for a federal prisoner who alleged the prison failed to provide him with proper medical attention. (Pl's Brief, Dkt. No. 44 at 6, citing *Carlson*, 446 U.S. 14 (1980)). Plaintiff likens his case to *Carlson* because "in both cases the claims allege a deliberate indifference and failure by prison officials to intervene, which resulted in harm to the plaintiff-prisoner." (Pl's Brief, Dkt. No. 44 at 6-7.)

Plaintiff further relies on *Bistrian v. Levi*, 912 F.3d 79, 90-91 (3d Cir. 2018), where the Third Circuit held "an inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context." (Pl's Brief, Dkt. No. 44 at 7.) The Third Circuit concluded that the Supreme Court "recognized a failure-to-protect claim under the Eighth Amendment." (*Id.*, citing *Farmer v. Brennan*, 511 U.S. 825, 829-34 (1994)). Plaintiff submits there is no reason to assume the Supreme Court in *Egbert* overruled *Farmer*. (*Id.* at 8.)

Defendants disagree. First, Defendants contend that Plaintiff's claims bears no resemblance to the three cases where the Supreme Court has recognized a *Bivens* damages remedy, *Bivens*, *Davis* or *Carlson*. (Defs' Reply Brief, Dkt. No. 47 at 6.) The plaintiff in *Carlson* alleged that prison staff knew her son had a serious, chronic asthmatic condition, but

> nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be

> inoperative which further impeded his breathing, and
> delayed for too long a time his transfer to an outside
> hospital.

*Carlson*, 446 U.S. at 17 n.1.  Here, Plaintiff's Eighth Amendment claims are based on the defendants' failure to protect him from a prison employee who repeatedly gave him creepy looks, made suggestive comments, spread rumors in the prison about his sexual orientation, and caressed his hand in a sexual manner.  Unlike *Carlson*, where the issue involved the prison's response to a medical emergency, the defendants' actions were guided by PREA and BOP Program Statement 5324.[3]  This case presents a new *Bivens* context from *Carlson*, and the existence of the BOP Administrative Remedy Program counsels hesitation in implying a damages remedy in the new context.  *Accord*, *Chambers v. C. Herrera*, 78 F.4th 1100, 1106 (9th Cir. 2023) ("[n]o case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members).  Therefore, this Court turns to whether the Supreme Court implied a Bivens damages remedy in *Farmer*, and whether Plaintiff's Eighth Amendment failure to protect claims arise in the same context.

In *Farmer*, the plaintiff alleged BOP officials and employees "despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a transsexual who 'projects feminine characteristics,' would be particularly vulnerable to sexual attack by some USP–Terre

---

[3]  See BOP Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program.  Available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited November 6, 2023).

Haute inmates" failed to protect him from rape and beating by other inmates. *Farmer*, 511 U.S. at 830-31 (1994). The Supreme Court granted certiorari "because Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'" *Id.* at 832. The Court did not address whether *Farmer* presented a new *Bivens* context or whether special factors counseled hesitation in implying a *Bivens* damages remedy, although the plaintiff sought damages and injunctive relief. *Id.* at 831.

Defendants argue that, after *Egbert*, plaintiffs may no longer rely on Third Circuit precedent holding the Supreme Court implied a *Bivens* damages remedy for Eighth Amendment claims of failure to protect inmate safety in *Farmer*. (Defs' Brief, Dkt. No. 47 at 8.) In *Egbert*, the Court recognized only three cases where it had implied a *Bivens* damages remedy. (*Id.*, citing *Egbert*, 142 S. Ct. at 1803.) Alternatively, Defendants argue this case presents a new *Bivens* context because the plaintiff in *Farmer* was a transgender woman with female characteristics, which put her in danger of inmate violence in the general prison population in a male prison, and plaintiff here is not transgender, nor was he assaulted by inmates in prison.

In *Egbert*, the Court stated, "[s]ince these cases [*Bivens*, *Davis* and *Carlson*] the Court has not implied additional causes of action under the Constitution." The last of these three Supreme Court cases, *Carlson*, was decided in 1980. *Farmer* was decided in 1994. In *Egbert*, the Court did not recognize *Farmer* as a case where it implied a Bivens damages remedy. Moreover, "the [Supreme] Court has 'consistently rebuffed' every request—12 of them now—to find implied causes of action against federal officials for

money damages under the Constitution." *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023) (quoting *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022) (quoting *Hernandez v. Mesa*, —— U.S. ——, 140 S. Ct. 735, 743)).  Thus, it is unlikely the Court in *Egbert* simply overlooked *Farmer* in identifying previous cases where the Court implied a *Bivens* damages remedy.  Even assuming for sake of argument that the Supreme Court implied a *Bivens* damages remedy in *Farmer*, this case presents a new *Bivens* context.

First, the allegations here are materially distinguishable from *Farmer* because the protection afforded by the Eighth Amendment in *Farmer* was from inmate on inmate violence, rather than sexual harassment by a corrections officer.  *See Berry v. Fitzgerald*, No. CV174904NLHAMD, 2023 WL 2424181, at *5 (D.N.J. Mar. 9, 2023) (distinguishing *Farmer* because prisoner's allegations of sexual assault by BOP corrections officers "were not contemplated by the Supreme Court's decisions in *Bivens*, *Davis*, or *Carlson*").

Second, the Court in *Egbert* noted that the two questions courts must ask to determine whether to imply a *Bivens* damages remedy "often resolve to a single question:  whether there is any reason to think that Congress might be better equipped to create a damages remedy."  596 U.S. at 492.  Therefore, even where the factual allegations may be similar, a case presents a new *Bivens* context if there is a reason to think Congress should make the decision to provide a damages remedy.

In analyzing whether there is a rational reason to believe Congress is better equipped to create a damages remedy, "the focus is not on the individual's recovery at

all. It is on deterrence." *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023) (quoting *Egbert*, 142 S. Ct. at 1807.)   Courts "cannot second-guess" the decision of Congress or the Executive when those branches of government have "created a remedial process that it finds sufficient to secure an adequate level of deterrence." *Egbert,* 596 U.S. at 498.

"In light of the PREA's purpose—to 'establish a zero-tolerance standard for the incidence of [sexual assault] in prisons in the United States," 34 U.S.C. § 30302(1)— and the numerous federal regulations governing reporting procedure and providing that the presumptive discipline for violations by staff members is termination [28 C.F.R. § 115.76(b)]," courts cannot second-guess whether PREA, and BOP regulations implementing PREA, provide an adequate level of deterrence for Plaintiff's Eighth Amendment failure to protect claim.   *Accord*, *Bivens v. Blaike*, No. 21-CV-00783-PAB-NYW, 2022 WL 2158984, at *7 (D. Colo. June 15, 2022), *report and recommendation adopted*, No. 21-CV-00783-PAB-NYW, 2022 WL 2716533 (D. Colo. July 13, 2022), *appeal dismissed sub nom. Bivens v. McGaugh*, No. 22-1228, 2022 WL 18494647 (10th Cir. Sept. 12, 2022); *Chambers v. C. Herrera*, 78 F.4th 1100, 1107 (9th Cir. 2023) ("the PLRA gives authority to the BOP, as part of the Executive Branch, to structure grievance procedures") (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) (noting that rules "are defined not by the PLRA, but by the prison grievance process itself"); *see also Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (declining to imply *Bivens* damages remedy for Eighth Amendment excessive force claim in prison context where "the Supreme Court has long since described the BOP Administrative Remedy Program as an adequate remedy.")

Therefore, this Court concludes that Plaintiff's Eighth Amendment failure to protect claim presents a new *Bivens* context, and at least one special factor—all that is needed—the existence of the BOP's administrative remedy program, counsels against creating a *Bivens* damages remedy here.  Therefore, the Court will grant Defendants' motion to dismiss the *Bivens* claims alleged in the complaint.

## III.   CONCLUSION

Having determined the Court should not imply a *Bivens* remedy for Plaintiff's First, Fifth and Eighth Amendment claims in the amended complaint, the Court need not reach Defendants' argument that they are entitled to qualified immunity.  The Court will grant Defendants' motion to dismiss the *Bivens* claims because the amended complaint fails to state a cognizable *Bivens* claim.

An appropriate Order follows.

**Date:  November 29, 2023**

                                    s/Renée Marie Bumb
                                    **RENÉE MARIE BUMB**
                                    **Chief United States District Judge**